UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL A. D'ADDIO, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | Case No. 3:03 CV 1460 (CFD) |
| | : | |
| CARLOS MALDONADO, | : | |
|     Defendant. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael D'Addio brought this action against New Haven police officer Carlos Maldonado, who is sued in his individual capacity only. D'Addio alleges that Maldonado deprived him of his Fourth Amendment right to be free from warrantless arrest and seizure, thus violating his civil rights under 42 U.S.C. § 1983.[1] Maldonado denies D'Addio's allegations, claims as an affirmative defense that he is entitled to qualified immunity, and has filed a motion for summary judgment.

**I.  Background[2]**

On May 14, 2003, Michael D'Addio was a resident of Wallingford, Connecticut and

---

[1] In his Complaint, D'Addio also alleged that Maldonado's actions constituted the Connecticut common law tort of intentional infliction of emotional distress. In his response to Maldonado's motion for summary judgment, however, D'Addio indicated that he was withdrawing this state law claim "to simplify the issues in this case." See Doc. #22 at 2 n.1. The Court dismisses D'Addio's emotional distress claim in light of this statement.

[2] The following facts are taken from the parties' Local Rule 56 statements (and related materials) and are undisputed unless otherwise indicated.

1

employed at the New Haven Metro-North Railroad terminal. D'Addio worked a 4:00 p.m. to midnight shift, with scheduled breaks from 7:00 to 7:30 p.m. and again from 9:00 to 9:15 p.m. On that day, D'Addio left the railroad terminal shortly before his 9:00 p.m. break and drove to the Long Wharf pier to take a short walk, as was his usual practice.[3]

D'Addio parked at the nearby Rusty Scupper restaurant, left his wallet and identification in his automobile, put on headphones, and began walking along the pier. At approximately 9:50 p.m. that night, Officer Maldonado and Officer Juan Ingles were driving in a marked New Haven police cruiser along Long Wharf Drive. D'Addio walked in front of the police car towards the Long Wharf pier. This apparently aroused the officers' suspicion, as the Long Wharf area had suffered vandalism and was a nighttime location for male prostitution and robberies. Although both officers claim that the Long Wharf pier parking lot and surrounding areas were closed to the public after sunset, D'Addio disputes this.[4]

Maldonado flashed the police car's spotlight on D'Addio and, using the cruiser's public address system, asked D'Addio to stop walking. Officer Ingles then rolled down the cruiser's passenger window and called to D'Addio to stop walking. D'Addio failed to respond to any of these calls (apparently due to his hearing being muffled by the headphones), and continued to

---

[3] D'Addio admits that his custom of leaving work during his breaks was without the knowledge or permission of Metro-North, and in fact was contrary to Metro-North's policy of requiring employees to remain at their job sites throughout the eight-hour workday.

[4] D'Addio agrees that the Long Wharf area was a target of police concern for the reasons stated by the officers, but denies that the area was off-limits to the public after dark. See Doc. # 21 at ¶¶ 5-6 (Defendant's Local Rule 56(a)(1) Statement); Doc. # 23 at ¶¶ 5-6 (Plaintiff's Local Rule 56 Statement). The defendant has not indicated any specific rule or ordinance supporting his belief that the area was closed to the public at night. See Affidavit of Carlos Maldonado at ¶ 11 (attached to Doc. #21); Affidavit of Juan B. Ingles at ¶ 7 (attached to Doc. #21).

walk away from the two officers. Officers Maldonado and Ingles then exited their vehicle, followed D'Addio on foot, and continued shouting for his attention. Only upon reaching the end of the pier and turning around did D'Addio respond to the officers' signals to him.

Maldonado asked D'Addio his name, address, and purpose for being on the pier so late at night. Maldonado also asked D'Addio to provide the officers some identification; D'Addio responded that he was a Wallingford resident on his "lunch break" from the nearby Metro-North railyard, but that his identification was locked in his car back at the Rusty Scupper parking lot. The officers told D'Addio that all three of them would have to go back to the Rusty Scupper in order to verify D'Addio's identity and run a warrant check on him. Maldonado claims that D'Addio then became agitated and began shouting and waving his arms at the officers, which D'Addio denies. The officers handcuffed D'Addio, placed him in the back of the police cruiser, and drove to the Rusty Scupper lot, which was about a minute away from where D'Addio was questioned on the pier.

Upon arriving at the parking lot, D'Addio pointed out his car. Maldonado began to run a background check on the car's license plates, at which point D'Addio volunteered that the plates did not belong to that automobile.[5] Maldonado then asked D'Addio to provide the name and phone number of his supervisor at Metro-North. D'Addio, presumably fearing discipline for leaving work and violating Metro-North policy, gave the police the name and number of a co-worker. This colleague told Maldonado that did not supervise D'Addio, and connected the

---

[5] The marker plates apparently belonged to another properly registered vehicle owned by D'Addio. The car he was driving on May 14, 2003 had recently been purchased by D'Addio in New York, but not yet registered in Connecticut. According to the plaintiff, his properly registered vehicle had broken down just before he was due at work. He therefore switched that vehicle's plates onto his new unregistered car so that he would not be late for his shift.

police officer to the foreman on duty. The acting supervisor verified D'Addio's employment but informed Maldonado that D'Addio was not supposed to be off Metro-North premises. Contemporaneously, Officer Ingles removed D'Addio's identification from his automobile. As the identification matched D'Addio's prior statements, he was released from handcuffs. The officers issued D'Addio a summons for misuse of plates and driving an unregistered vehicle, removed his marker plates, and had his car towed.

Approximately 25 minutes elapsed from the time D'Addio first was stopped on the Long Wharf pier until his car was towed; it took D'Addio approximately another 30 minutes to arrange alternate transportation and get back to his job.

## II.     Standard of Review

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323.

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

### III.    Discussion

Officer Maldonado raises two arguments in his motion for summary judgment: first, that he did not violate D'Addio's Fourth Amendment rights because he conducted a valid investigatory detention, not a warrantless arrest, as authorized by Terry v. Ohio, 392 U.S. 1 (1968); and second, that he is entitled to judgment in his favor because his actions are protected under the doctrine of qualified immunity.

42 U.S.C. § 1983 provides a civil claim for damages whenever a person acting under color of law subjects an individual "to the deprivation of any rights, privileges, or immunities secured by the Constitution" or other federal laws. State officials, however, may invoke the affirmative defense of qualified immunity. That doctrine shields "police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A clearly established right is one whose "contours" are "sufficiently clear that a reasonable official would understand that what he [did] violate[d] that right." Anderson, 483 U.S. at 640 (1987).

Qualified immunity is meant to ensure that "fear of personal monetary liability and harassing litigation will [not] unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The Supreme Court has construed the doctrine as providing "ample protection to all but the plainly incompetent or those who knowingly violate the law." Groh v. Ramirez, 124 S. Ct. 1284, 1298 (Feb. 24, 2004) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In the instant case, the Court first must determine whether the undisputed facts concerning Maldonado's conduct, as well as evidence presented by the plaintiff viewed in the light most favorable to that party, violated D'Addio's constitutional rights under the Fourth Amendment, and if so, whether those rights were "clearly established" under the specific circumstances of this case. See Saucier v. Katz, 533 U.S. 194, 201 (2001).

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops or persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). At the same time, the Supreme Court has stated that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, 392 U.S. 1, 22 (1968). Under the principles first stated in Terry, a police officer may "briefly detain a person for investigative purposes" without violating the Fourth Amendment. United States v. Sokolow, 490 U.S. 1, 7 (1989). For an investigatory stop to be constitutionally permissible, however, the investigating officer must have "reasonable suspicion" that an individual may be involved in criminal activity. Reasonable suspicion has been otherwise defined as "a particularized and

objective basis for suspecting the particular person stopped . . . ." United States v. Cortez, 449 U.S. 411, 417-18 (1981).

On the current record, the Court can not determine as a matter of law whether Officer Maldonado's actions constituted a warrantless arrest or a permissible Terry stop. Genuine disputes of material fact exist as to whether the officers initially possessed reasonable suspicion to conduct a Terry stop of D'Addio; the circumstances and actions of all three individuals during the stop; and whether the conditions of the stop at some point transformed the encounter into a warrantless arrest.

Maldonado initially claims that he stopped D'Addio because the latter was walking in an area prone to crime at a time when Maldonado believed the pier to be closed to public access. The Supreme Court has stated that "an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (citing Brown v. Texas, 443 U.S. 47 (1979)). Maldonado also alleges, and D'Addio agrees, that the plaintiff did not stop walking in response to initial police requests. While "headlong flight" may be "a pertinent factor in determining reasonable suspicion," an individual has a countervailing right "to ignore the police and go about his business." Wardlow, 528 U.S. at 124, 125. Refusal to cooperate with the police, "without more, does not furnish the minimal level of objective justification needed for a detention or seizure." Florida v. Bostick, 501 U.S. 429, 437 (1991).[6] Furthermore, the parties agree that, upon turning and seeing the officers, D'Addio stopped and

---

[6] Indeed, Maldonado does not claim that D'Addio began to run or alter his speed upon being shouted at, simply that he continued on his walk and either ignored or failed to hear the police.

provided the officers his name and reason for being at the pier that night.[7]

Because disputed issues of fact exist as to the cause, duration, and condition of D'Addio's detention, summary judgment as to whether the detention violated D'Addio's rights under the Fourth Amendment is inappropriate.  See Oliveira v. Mayer, 23 F.3d 642, 645 (2d Cir. 1994) ("In a section 1983 action, it would usually be the jury's task to decide whether a detention amounted to a de facto arrest, since 'the issue of precisely when an arrest takes place is a question of fact.'") (quoting Posr v. Doherty, 944 F.2d 91, 99 (2d Cir. 1991)); see also Montavon v. Town of Southington, 1997 U.S. Dist. LEXIS 21883 *1, *4-*6 (D. Conn. Sept. 29, 1997) (discussing Oliveira and agreeing that contradicting evidence on nature and reasonableness of detention must be resolved by the factfinder).

Furthermore, due to the above disputes of fact, the Court is similarly unable to resolve at this time whether Maldonado is entitled to qualified immunity.  "Where . . . there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is inappropriate."  McKelvie v. Cooper, 190 F.3d 58, 63 (2d Cir. 1999); see also Oliveira, 23 F.3d at 649-50; Haynes v. City of New London, 2002 U.S. Dist. LEXIS 10366 *1, *14 (D. Conn. May 17, 2002); Montavon, 1997 U.S. Dist LEXIS at *5.

## IV.  Conclusion

For the above reasons, Defendant's Motion for Summary Judgment [Doc. #19] is DENIED as to the plaintiff's claim under 42 U.S.C. § 1983, and DENIED AS MOOT as to the

---

[7] Maldonado states in his affidavit that it was at this stage that D'Addio had to be handcuffed for reasons of officer safety, as he began to wave his arms and shout upon being told that the officers wished to visit his car and check his identification.  D'Addio, as previously stated, denies this behavior.  This also is a genuine dispute of material fact.

plaintiff's claim for intentional infliction of emotional distress.

So ordered this _2nd_ day of March 2006 at Hartford, Connecticut.

                                              _/s/ CFD_____
                                              **CHRISTOPHER F. DRONEY**
                                              **UNITED STATES DISTRICT JUDGE**